# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MARK LINDSAY,** | ) |
|     **Plaintiff** | ) |
| | )     **C.A.No. 14-195ERIE** |
| **vs.** | ) |
| | )     **District Judge Bissoon** |
| **DR. MARK WILSON, et al,** | )     **Magistrate Judge Baxter** |
|     **Defendants.** | ) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.    RECOMMENDATION**

It is respectfully recommended that the motion to dismiss filed by Defendants Gilreath, Stroup, and Maxa [ECF No. 31] be denied.

It is further recommended that the motion to dismiss filed by Defendant Zirkle [ECF No. 25] be granted.

It is further recommended that Defendant Wilson be dismissed from this case pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.

The Clerk of Courts should be directed to terminate Defendants Zirkle and Wilson as parties to this action.

Plaintiff should be directed to file a Second Amended Complaint following the final resolution of this Report and Recommendation.

1

## II. REPORT

### A. Relevant Procedural History

Plaintiff, acting *pro se*, filed this civil rights action on July 15, 2015. Named as Defendants are: Dr. Mark Wilson[1]: Dr. Gilreath; Physician Assistant Mr. Stroup; Dr. Maxa; and Ms. Christine Zirkle, SCI Albion Chief Health Care Administrator. Plaintiff alleges that during his incarceration, Defendants failed to provide or delayed medical treatment which lead to the amputation of his big toe. Plaintiff claims that Defendants violated his Eighth Amendment rights.[2]

Plaintiff filed an Amended Complaint, which is the operative pleading at this point in the proceedings. ECF No. 23. Defendant Zirkle, a Department of Corrections employee, is represented by the Office of the Attorney General, and Defendants Gilreath, Stroup, and Maxa (hereinafter, "Medical Defendants") are represented by private counsel. Each set of Defendants filed a motion to dismiss in response to the first amended complaint. ECF No. 25; ECF No. 31. In opposition to the motions to dismiss, Plaintiff has filed a proposed Second Amended Complaint with evidentiary attachments. ECF No. 38.

---

[1] The docket reflects that Dr. Wilson has not been served.

[2] Plaintiff also alleges that Defendants' actions violated his Fourteenth Amendment rights to due process. However, any stand-alone Fourteenth Amendment right is subsumed by the Eighth Amendment claim. Noting its "reluctan[ce] to expand the concept of substantive due process," the Supreme Court has established the "more-specific-provision rule." County of Sacramento v. Lewis, 523 U.S. 833, 842-43 (1998). Under this rule, "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." United States v. Lanier, 520 U.S. 259, 272 n.7 (1997). See also Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 260 (3d Cir. 2010). Because Plaintiff alleges the same facts in support of all of his constitutional claims, the Court does not independently analyze those facts under a Fourteenth Amendment substantive due process cause of action, but only under the Eighth Amendment.

2

### B. Standards of Review

#### 1) Pro se litigants

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. See Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969)("[W]e should recognize that a habeas corpus petition prepared by a prisoner without the aid of counsel may be inartfully drawn and should therefore be read 'with a measure of tolerance.'"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997), overruled on other grounds by Abdul-Akbar v. McKelvie, 239 F.3d 307 (3d Cir. 2001). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

#### 2) Motion to dismiss pursuant to Rule 12(b)(6)

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint

must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570 (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal, 556 U.S. 662 (2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

A Court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). See also McTernan v. City of York, Pennsylvania, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). A plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 556, citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004). Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D. Del.) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556 n.3.

4

The Third Circuit has expounded on the Twombly/Iqbal line of cases:

> To determine the sufficiency of a complaint under Twombly and Iqbal, we must take the following three steps:
>
> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) quoting Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).

**C. The Factual Allegations of Plaintiff's First Amended Complaint**

In the face of a motion to dismiss, the Court must review the factual allegations of the Amended Complaint in the light most favorable to the Plaintiff.

On August 16, 2013, Plaintiff reported to sick call complaining of severe pain in his right foot. Plaintiff was examined by Dr. Wilson who diagnosed him with gout and prescribed ibuprofen. Wilson stated that he could not prescribe appropriate medication for gout due to the expense. ECF No. 23, ¶¶ 1-2.

On August 22, 2013, Plaintiff ran into Dr. Wilson in the hallway and complained of worsening pain, swelling and redness in his foot. Wilson told Plaintiff he would order a steroid (Prednisone), but Plaintiff did not receive the medication immediately due to a general search or lockdown of the institution. Id. at ¶¶ 3-4.

On August 29, 2013, Plaintiff complained of extreme pain and swelling to a nurse who directed him to submit another sick call request to see a doctor. Id. at ¶ 5. Plaintiff did not receive medical attention on August 29th or August 30th.

On August 31, 2013, Plaintiff was taken to the infirmary by prison staff after his toe ruptured in the shower. Dr. Valerie Gilreath[3] examined Plaintiff and diagnosed him with an infection rather than gout. Gilreath ordered x-rays of the infected area. Plaintiff complained about extreme pain causing inability to walk to the dining hall and disrupting his sleep, but Gilreath denied pain medications. Id. at ¶¶ 6-7.

On September 1, 2013, Plaintiff was seen by PA Stroup for follow-up. Stroup drew on Plaintiff's foot with a marker and told him that if the redness and swelling expanded beyond the mark, to sign up for sick call. Plaintiff was again denied pain medication. Id. at ¶ 8.

On September 4, 2013, Plaintiff was examined by PA Stroup due to the spreading discoloration and extreme pain in his foot. Stroup denied pain medication and told Plaintiff he would look into why Plaintiff had not received the ordered x-rays. Id. at ¶ 9.

On September 17, 2015, Plaintiff was seen by PA Stroup for follow-up after the spreading discoloration passed the marked lines on his foot. Plaintiff complained that his foot had not been x-rayed. Stroup told Plaintiff he would look into the delay with the x-rays. Plaintiff complained of extreme pain, but his request for pain medication was denied. Id. at ¶ 10.

On September 18, 2013, Plaintiff's foot was x-rayed. The x-ray technician told Plaintiff she had been available three times per week for the past month and did not know why it took so long for Plaintiff to receive x-rays. Id. at ¶ 11.

On September 20, 2013, Plaintiff was called to the infirmary by PA Stroup who informed Plaintiff that his x-rays revealed a bone infection of the toe and that treatment would need to be provided by an outside hospital. That same day, Plaintiff was examined by Dr. Maxa, who took a

---

[3] Plaintiff refers in Dr. Gilreath in the masculine, while Defendants refer to Dr. Gilreath in the feminine. Because at this stage of the proceedings, the Federal Rules direct that a court view the allegations of the complaint in the light most favorable to Plaintiff, this Court will refer to this Defendant in the masculine. See Fed.R.Civ.P. 12.

culture of the infected area. Plaintiff's complained of excruciating pain, but Plaintiff's request for pain medication was denied. Id. at ¶¶ 12-13.

On September 29, 2013, nine days after the culture, Plaintiff sent a request to Maxa inquiring about the culture results which were to have been available within 72 hours. Plaintiff also inquired as to the treatment promised by Stroup on September 20th. Id. at ¶ 14.[4]

On September 30, 2013, forty-five days after Plaintiff initially complained about the pain in his foot, Dr. Maxa told Plaintiff that the culture revealed the presence of osteomyelitis, requiring specialized treatment. Id. at ¶ 15.

On October 4, 2013, Plaintiff underwent an MRI at Meadville Medical Center. Upon his readmittance into SCI Albion, Plaintiff was seen by PA Stroup who again denied him pain medications, despite increased redness spreading across the foot. Id. at ¶ 16.

On October 9, 2013, Plaintiff was transported to Hamot Medical Center and was examined by Dr. Matthew Testrake who explained that the bone was infected and recommended amputation. Later that day, Plaintiff underwent the amputation and was told that pain medication and antibiotics would be ordered. Id. at ¶ 18. On October 11, 2013, Plaintiff was returned to Hamot Hospital for a second surgical procedure to clean and suture the area. Id. at ¶ 19.

On October 13, 2013, Plaintiff was returned to SCI Albion and admitted into the infirmary for overnight observation. The following day, Plaintiff was seen by Maxa who indicated that he would continue Dr. Testrake's order of pain medication and antibiotics. Plaintiff did not receive any pain medications until ten days later on October 24th. Id. at ¶¶ 20-24.

---

[4] In his Amended Complaint, Plaintiff references Exhibits 1, 2(a) and 2(b). However, no exhibits are attached to the Amended Complaint.

7

Plaintiff avers that the bone infection that ultimately led to the amputation of his right toe "was the most intense pain that he ever experienced, bar none, who repeatedly informed Defendants Wilson, Gilreath, Stroup and Maxa, of said pain, lack of sleep due to such pain, and inability to walk to the dining hall for meals. Yet for 68 days, [ ] Defendants failed to provide any pain relief for Plaintiff's obvious suffering in addition to the un-necessary delay in receiving the x-rays which may have prevented the amputation of his right great toe if they had been taken in a timely manner." Id. at pages 10-11.

On October 15, 2013, Plaintiff filed a grievance complaining of the Medical Department's failure to treat the bone infection and months of pain and suffering. Zirkle responded to the grievance, denying it and indicating that Plaintiff's "insulin dependent diabetes" was partially responsible for the infection and amputation. Plaintiff claims he is not an insulin-dependent diabetic and he alleges that Zirkle's grievance response was an attempt to cover-up the acts of the Medical Defendants. Id. at ¶ ¶ 25-27.

### D. Medical Defendants' Motion to Dismiss

The Medical Defendants move to dismiss the First Amended Complaint based upon Plaintiff's failure to state an Eighth Amendment claim. In opposition to the pending motion to dismiss, Plaintiff has filed a proposed Second Amended Complaint.

In the medical context, a constitutional violation under the Eighth Amendment occurs only when prison officials are deliberately indifferent to serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976). The standard is two-pronged, "[i]t requires deliberate indifference on the part of prison officials and it requires that the prisoner's medical needs be serious." West v. Keve, 571 F.2d 158, 161 (3d Cir. 1978). A serious medical need is "one that has been

diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Corr'al Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). The Medical Defendants do not argue that Plaintiff's condition was not a serious medical need.

Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104. Such indifference can be manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir.1993), or "persistent conduct in the face of resultant pain and risk of permanent injury," White v. Napoleon, 897 F.2d 103, 109 (3d Cir.1990). Mere misdiagnosis or negligent treatment is not actionable under § 1983 as an Eighth Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). See also White, 897 F.2d at 108 ("mere medical malpractice cannot give rise to a violation of the Eighth Amendment."); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1081 (3d Cir. 1976) ("Neglect, carelessness or malpractice is more properly the subject of a tort action in the state courts."). "While the distinction between deliberate indifference and malpractice can be subtle, it is well established that so long as a physician exercises professional judgment, his behavior will not violate a prisoner's constitutional rights." Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990) citing Youngberg v. Romeo, 457 U.S. 307, 322-23 (1982).

Here, Defendants argue that Plaintiff has failed to allege facts sufficient to suggest that each of them individually acted with deliberate indifference toward Plaintiff's medical condition.

9

*Gilreath*

As set forth in the Amended Complaint, Plaintiff's foot condition was first treated by Gilreath on August 31st, after his toe ruptured in the shower. Gilreath diagnosed Plaintiff with an infection rather than gout (as diagnosed by Dr. Wilson two weeks earlier), ordered x-rays, but denied pain medication. ECF No. 23, ¶¶ 6-7. According to the Amended Complaint, this is the totality of Gilreath's involvement in Plaintiff's medical treatment. So then, Plaintiff's claim against Gilreath is limited to the August 31st emergency visit and is two-fold – he failed to ensure that Plaintiff received the prescribed x-rays and he denied pain medication. Plaintiff's allegation that he was in excruciating pain for sixteen days before his toe "actually ripped open, emitting a steady stream of pus" [ECF No. 23, ¶ 6], and was denied pain medication by Gilreath at his emergency visit is sufficient to state a claim of deliberate indifference in the face of a motion to dismiss. See Spruill v. Gillis, 372 F.3d 218, 225, 236-38 (3d Cir. 2004) (inmate's complaints that pain medication prescribed was insufficient to treat debilitating pain rose to the level of a constitutional violation).

In the proposed Second Amended Complaint, Plaintiff provides more factual detail as to Gilreath's involvement and the deliberate indifference claim against Gilreath is expanded beyond the claims as set forth in the Amended Complaint. Plaintiff explains that lab results (from bloodwork ordered by Dr. Wilson on August 15th) ruled out gout (due to the absence of high uric acid) and indicated a serious infection (based on an elevated white blood cell count). Plaintiff avers that during the emergency examination on August 31st, Gilreath reviewed the medical chart including the lab results and should have immediately recognized severe osteomyelitis requiring the immediate infusion of intravenous antibiotics (both broad spectrum and staphylococcus-specific), as well as immediate biopsy. ECF No. 38, pages 7-8. Exhibits attached to the proposed

Second Amended Complaint support Plaintiff's supposition in part in that the lab results dated August 24th (and presumably available to Gilreath on August 31st) reveal normal uric acid levels and elevated white blood cell count. ECF No. 38-4, pages 2-6.

Furthermore, in the proposed Second Amended Complaint, Plaintiff explains that on August 31st, although Gilreath told Plaintiff that in order to determine whether the infection had infiltrated the bone he was ordering x-rays, Gilreath failed to issue the order based on non-medical reasons. Only eighteen days later, after Plaintiff complained to Stroup on two separate occasions, were the x-rays finally ordered. ECF No. 38, ¶¶ 21-22. In support of this allegation, Plaintiff has provided a Physician's Order directing x-rays of the right foot dated September 17th and signed by Stroup and Maxa, as well as other non-Defendants. ECF No. 38-10, page 2.

The allegations against Gilreath in the proposed Second Amended Complaint are more than sufficient to state a deliberate indifference claim against Gilreath. Plaintiff should be allowed to amend his complaint as to his deliberate indifference claim against him.[5]

*Stroup*

According to the First Amended Complaint, Plaintiff was treated by Stroup on September 1st, September 4th, September 17th, September 20th, and October 4th. Plaintiff's allegations against Stroup all focus on the repeated denial of pain relief medication throughout this time period. Repeated denial of pain medication in the face of ongoing pain may rise to the level of deliberate indifference in certain situations. See West v. Keve, 571 F.2d at 162 (a case in which aspirin as the sole source of post-operative pain management sufficed to state a claim of deliberate

---

[5] In the interests of fairness and judicial economy, this Court will allow Plaintiff to further amend his complaint. See Fed.R.Civ.P. 15(a)(2) (stating that "the court should freely give leave [to amend] when justice so requires.").

11

indifference). Here, in the face of a motion to dismiss, Plaintiff's allegations are sufficient to state a claim. Moreover, in the proposed Second Amended Complaint, Plaintiff expands his allegations against Stroup beyond denial of pain medication. Plaintiff should be permitted to amend in this regard.

*Maxa*

As set forth in the Amended Complaint, Plaintiff was examined by Maxa on September 20th, September 30th, and October 13th. On September 20th, Maxa took a culture of Plaintiff's toe, but denied pain medication. On September 30th, Maxa reviewed the culture results with Plaintiff despite the fact that the results were to have been available within seventy-two hours, and denied pain medication. On October 13th, following the amputation of Plaintiff's toe, Maxa failed to continue the outside surgeon's prescription of pain medications.[6] These allegations are sufficient to state a deliberate indifference claim. See McElligott v. Foley, 182 F.3d 1248, 1257 (11th Cir. 1999) ("A core principle of the Eighth Amendment jurisdiction in the area of medical care is that prison officials with knowledge of the need for care may not, by failing to provide care, delaying care, or providing grossly inadequate care, cause a prisoner to needlessly suffer the pain resulting from his or her illness.").

Again, Plaintiff's proposed Second Amended Complaint provides additional factual allegations and evidentiary support providing a more detailed picture of Maxa's involvement.

---

[6] In the brief in support of the motion to dismiss, Defendants imply that the delay in the availability of pain medication for Plaintiff following his surgery was a mistake for which Maxa was not responsible. ECF No. 32, page 13. In support of this argument, Defendants cite Defendant Zirkle's response to Plaintiff's grievance which explains "Upon return [following the amputation] the physician did order pain medication but due to the electronic medication record, did not show on the medication pass. When the nurse notified the physician, it was corrected and the medication was available." ECF No. 32-1, page 12. Defendants' argument in this regard is more appropriate for resolution on a motion for summary judgment following discovery.

12

Especially important in this regard are the allegations that Maxa reviewed the lab results of Plaintiff's bloodwork on August 26th (several days before the toe ruptured) and his delay in approving the x-rays, which occurred eighteen days after Gilreath told Plaintiff she had ordered them. See Exhibits at ECF No. 38-4; ECF No. 38-10. Plaintiff should be allowed to amend his complaint as to the deliberate indifference claim against Maxa.

### E. Defendant Zirkle's Motion to Dismiss

Next, Defendant Zirkle moves to dismiss based on Plaintiff's failure to adequately allege her personal involvement in the constitutional violation. Plaintiff identifies Zirkle as the Chief Health Care Administrator and alleges that she "is the Defendant with both medical expertise and position of authority who failed to provide remedy. Who lent liability cover to the other Defendants by claiming an erroneous rationale in her grievance response as the reason delay treatment and denied remedy." ECF No. 23, page 2.

Zirkle argues that Plaintiff has not made any allegation sufficient to factually support her personal involvement and/or acquiescence in the allegedly inadequate medical care. See Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011). When a supervisory official is sued in a civil rights action, liability can only be imposed if that official played an "affirmative part" in the complained-of misconduct. Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). See also Rode v. Dellarciprete, 845 F.2d 1958, 1207 (3d Cir.1988). Although a supervisor cannot encourage constitutional violations, a supervisor has "no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct." Id. quoting Brown v. Grabowski, 922 F.2d 1097, 1120 (3d Cir. 1990).

Even if Plaintiff could factually support the personal involvement of Zirkle, he has failed to state a claim upon which relief may be granted. Non-medical prison officials, such as Zirkle, cannot be

> considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor. [ ... ] If a prisoner is under the care of medical experts, a nonmedical prison official will generally be justified in believing that the prisoner is in capable hands.
>
> Absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official [ ... ] will not be chargeable with [ ... ] deliberate indifference [under the Eighth Amendment].

Spruill, 372 F.3d at 236, quoting Durmer, 991 F.2d at 69. In other words, a non-medical supervisory official may be held liable if there was "knowledge of malicious' and sadistic' medical mistreatment." Henderson v. Bussanich, 2006 WL 3761998, at *7 (M.D.Pa.), interpreting Spruill, 372 F.3d at 236-37.

Plaintiff's claims against Zirkle arise solely out of her participation in denying Plaintiff's grievances filed after his injury. Participation in the after-the-fact review of a grievance or appeal is insufficient to establish personal involvement in the underlying violation of a plaintiff's rights. Rode, 845 F.2d at 1208 (finding the filing of a grievance insufficient to show the actual knowledge necessary for personal involvement); Brooks v. Beard, 167 Fed.App'x 923, 925 (3d Cir. 2006) (holding that a state prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond to a prison grievance, did not establish that the officials and administrators were involved in the underlying misconduct). Defendant Zirkle's motion to dismiss should be granted and she should be terminated as a Defendant to this action.

Plaintiff's allegations against Zirkle in the proposed Second Amended Complaint fail to state a claim as her involvement is limited to after-the-fact circumstances. Plaintiff should not be permitted to amend his claim against Zirkle as the proposed amendments do not remedy the claim.

### F. Defendant Dr. Wilson

The docket sheet reflects that service has not been accomplished against Dr. Wilson. This Defendant was named in the Original Complaint filed by Plaintiff on July 15, 2014. Service has been attempted on Dr. Wilson, but none of these attempts has resulted in service being accomplished. See ECF No. 10; ECF No. 33; ECF No. 50; ECF No. 51; ECF No. 54. As a result, this Defendant should be dismissed from this case pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, as he has not been served within 120 days of the date on which he was named as a Defendant in this case. See Rule 4(m) (giving Court authority to dismiss a case after failure to serve).

### G. Punitive Damages

Finally, Defendants argue that Plaintiff's request for punitive damages should be dismissed because Plaintiff has failed to make any allegations that their conduct reached the level of outrageousness necessary to support such an award. This Court disagrees.

"[A] jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56 (1983). In the instant case, the jury may be able to determine that Defendants actions evinced a reckless or callous indifference to plaintiff's federally protected rights. Thus, it is

inappropriate to dismiss the punitive damages claim at this time and the motion to dismiss should be denied in this regard.

### H. Amendment

Although this Court recommends that Plaintiff be permitted to amend his complaint in regard to his deliberate indifference claims against Gilreath, Stroup and Maxa, Plaintiff should be directed to file a new Second Amended Complaint, which specifically sets out allegations regarding each of these defendants and follows the reasoning in this opinion. The current pending motion to amend is dismissed as moot by separate order.

## III. CONCLUSION

It is respectfully recommended that the motion to dismiss filed by Defendants Gilreath, Stroup, and Maxa [ECF No. 31] be denied.

It is further recommended that the motion to dismiss filed by Defendant Zirkle [ECF No. 25] be granted.

It is further recommended that Defendant Wilson be dismissed from this case pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.

The Clerk of Courts should be directed to terminate Defendants Zirkle and Wilson as parties to this action.

Plaintiff should be directed to file a Second Amended Complaint following the final resolution of this Report and Recommendation.

In accordance with 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72, the parties must seek review by the district court by filing Objections to the Report and Recommendation within

fourteen days. Any party opposing the objections shall have fourteen days to respond thereto. See Fed.R.Civ.P. 72(b)(2). Failure to file timely objections may constitute a waiver of appellate rights. See <u>Brightwell v. Lehman</u>, 637 F.3d 187, 194 n.7 (3d Cir. 2011); <u>Nara v. Frank</u>, 488 F.3d 187 (3d Cir. 2007).

<u>/s/ Susan Paradise Baxter</u>
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: August 4, 2015